NO. 4-97-0413

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,   )   Appeal from

Plaintiff-Appellee,          )   Circuit Court of

v.                           )   Vermilion County

ROBBIE J. MOORE,                       )   No. 96CF264

Defendant-Appellant.         )   

                                       )   Honorable 

                                       )   Thomas J. Fahey,

                                       )   Judge Presiding.

_________________________________________________________________

MODIFIED ON DENIAL OF REHEARING

JUSTICE STEIGMANN delivered the opinion of the court:

In June 1996, the State charged defendant, Robbie J. Moore, with three counts of aggravated criminal sexual assault (720 ILCS 5/12-14(b)(1) (West 1994)) and one count of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 1994)).  Subse­quently, the trial court granted the State leave to amend the aggra­vat­ed criminal sexual assault charges to three counts of predato­ry criminal sexual assault of a child (720 ILCS 5/12-14.1 (West 1996)).  Defendant waived jury trial, and in January 1997, the court conducted a bench trial and found defen­dant guilty of all charges.  In April 1997, the court sentenced defen­dant to 20 years in prison on each of the three counts of preda­tory crimi­nal sexual assault of a child and 7 years in prison for aggra­vated criminal sexual abuse, with these sen­tences to be served consec­utive­ly.  The court also awarded defendant 312 days' credit for time served prior to sentencing.

Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt of predatory criminal sexual assault of a child and aggravated criminal sexual abuse; (2) his convic­tion should be re­versed because the supreme court has declared uncon­stitu­tional the statute which created the offense of preda­tory crimi­nal sexual assault of a child; (3) because the "truth-in-sentenc­ing" legis­lation to which the trial court referred at the sen­tenc­ing hearing vio­lates the Illinois Consti­tution, this case must be remanded to clarify defendant's enti­tlement to day-for-day credit for time served; and (4) because defendant re­ceived consecutive terms of imprison­ment for multiple convictions, he is entitled to multiple credit for time served in custody prior to sentencing.  We affirm as modified and remand with directions.

I. BACKGROUND

At defendant's bench trial, the State's primary wit­nesses were the three juveniles who were the alleged victims of defendant's crimes.  

Counts I and II alleged that between Febru­ary 1, 1996, and June 10, 1996, defendant know­ingly commit­ted an act of sexual penetra­tion with T.C., who was under 13 years of age when the acts were committed, in that defendant placed his penis in T.C.'s mouth.  

At the time of the January 1997 bench trial, T.C. was 12 years old.  He testi­fied that he met defen­dant, whom he knew by the name of "Ratt," when Ratt and his girlfriend, Kimberly Harris, moved into the neigh­borhood.  At first, Ratt was nice to T.C.'s broth­ers and the other 11- or 12-year-old children who hung around Ratt's trail­er.  

Ratt and Kim spoke to T.C. about what they called the "Inner Circle," which Ratt explained consisted of people who "had powers" and could control other people's minds.  Ratt told T.C. he could become a member of the Inner Circle if he passed a test and paid Ratt $50 per month.  T.C. "thought it would be cool" to become a member and told Ratt he wanted to join.

On one occasion, because T.C.'s mother said that she would not permit him to spend the night away from home, T.C. pretended that he was going to run away but he actually stayed at Ratt's trailer.  At some point during that evening when Ratt and T.C. were alone in one of the trailer's bedrooms, Ratt gave T.C. an envelope with a paper inside.  T.C. read the paper that said he had to let Ratt "fondle me and other stuff like that."  After T.C. read the paper, Ratt burned it.  He also informed T.C. if he did not do what Ratt said, T.C. would die.

Ratt then told T.C. to take his pants off, and T.C. complied, "because I wanted to be in the cult thing."  Ratt then made T.C. suck Ratt's penis, and then Ratt sucked T.C.'s penis.  T.C. testified that Ratt then "stuck his penis in my butt."  T.C. said nothing during all of this because he "really wanted to be in the cult."  

After Ratt told T.C. that Ratt was done, they went into the living room, and T.C. fell asleep.  He left the trailer around 3 a.m. and returned home.  T.C. did not tell anybody about this event until a few months later.  

T.C.'s mother ground­ed him for a month for being out so late, but after that ended, T.C. returned to see Ratt at his trail­er.  Ratt told T.C. that no one else was present and that if T.C. did the same things again, T.C. would not have to pay $50 that month.  Ratt had originally explained to T.C. that the $50 was for "materials and stuff" that Ratt was going to use to teach T.C. about the cult.  T.C. testified he agreed, and Ratt made him suck Ratt's penis again, Ratt also sucked T.C.'s penis, and then Ratt again stuck his penis in T.C.'s anus.  When Ratt was done, T.C. went home and told no one about the incident until about a month later.  

Ratt had T.C. sign a piece of paper (which also con­tained other names) to signify that T.C. was in the cult.  When T.C. testified, the prosecutor showed him a piece of paper bearing his signature and the names of Ratt and other children. T.C. identified the paper as the one he had signed.  

Accord­ing to T.C., A.C.'s mother found a bunch of books and notes that appar­ently caused her to contact the police regarding Ratt, A.C., and other children.  That occurred about a month or so after the last incident involving T.C. and Ratt.

On cross-examination, T.C. at first said that it was painful when Ratt stuck his penis in T.C.'s anus, but he later explained that it was not "really painful because [Ratt] had some cream that I guess numbed it."  T.C. claimed that he never had any blood in his underpants as a result of either of these incidents, and he never received any medical treatment.  Although T.C. told some of his friends about "what was going on with the Inner Circle," he never talked to them about how someone got into the Inner Circle.  

Count III alleged that defendant committed predatory criminal sexual assault of a child between February 1, 1996, and June 10, 1996, because he knowingly committed an act of sexual penetration with J.G., who was under 13 years of age when the act was committed, in that defendant placed his finger in J.G.'s anus.  At defendant's trial, J.G. testified that he was six years old.  He had trouble remembering dates but testified that he met defendant, whom he also knew as Ratt, through his cousins.  Along with other kids, he visited Ratt's trailer a few times.  

During one of J.G.'s visits to Ratt's trailer with several of J.G.'s cous­ins, J.G. and Ratt were alone in the kitchen when the others left that room.  J.G. testi­fied that Ratt then "sticked his finger up my butt."  Ratt first told J.G. to get on the ground and J.G. tried to run but Ratt grabbed him and J.G. could not.  J.G. explained that he did not yell when Ratt put his finger in J.G.'s anus because Ratt said he would kill J.G.  

J.G. was wearing pants, but Ratt did not take the pants down.  Accord­ing to J.G., Ratt was able to put his finger up J.G.'s butt because J.G. had a hole in his pants.  J.G. also explained that he had a hole in his underwear as well.  When Ratt released J.G., he ran home and told his father, who called the police.  J.G. never went over to Ratt's trailer again because Ratt had hurt him.

Count IV alleged that defendant committed aggravated criminal sexual abuse in that between February 1, 1996, and June 10, 1996, he knowingly committed an act of sexual conduct with A.C., who was at least 13 years of age but under 17 years of age, in that defendant fondled her breasts and vagina.  At the January 1997 bench trial, A.C. testified that she was 14 years old and had met Ratt the previous spring when he moved into the neighbor­hood.  At first, Ratt and his live-in girlfriend, Kimberly Harris, were friendly to A.C. and the other neighborhood chil­dren who hung out at their trailer.  

Ratt and Harris mentioned something to A.C. they called the Inner Circle, which Ratt explained was "like something for people who believed in the devil."  Ratt gave A.C. some note­books and books to read that supposedly explained what the Inner Circle was about.  Later, A.C. signed a paper to signify her member­ship in the Inner Circle.  

On one particular night, A.C. stayed over at Ratt's trailer, and only A.C., Harris, and Ratt were present.  After A.C. put on her night clothes, she told Harris and Ratt that she had a headache and asked for an aspirin.  They gave her a little white pill, but it did not have an effect upon her like an aspirin.  Instead, it made her "real drowsy in like the state I couldn't move and everything."  

As A.C. lay on the bed wearing a T-shirt and a pair of shorts, she was in the process of falling asleep when Kim and Ratt came in to the trailer's bedroom in which A.C. was lying down.  They started touch­ing A.C. on her breasts and between her legs.  Harris started first, touch­ing between A.C.'s legs while Ratt "was messing with my breasts."  She further explained that he "was squeezing them and stuff" with his hands underneath her shirt.  A.C. told them to quit, but they did not listen to her.  A.C. testi­fied that at the time, she could barely move.

A.C. could not say how long Ratt and Harris continued this conduct, but after a while they stopped and told A.C. that if she said anything to anybody, Ratt was going to slit her throat.  

After Ratt and Harris left the bedroom, A.C. fell asleep.  The next morning, she awakened and got dressed, and they threat­ened her again by telling her that if she said any­thing to her parents, Ratt was going to slit her throat.  When she later went home, she said nothing about these events because she was scared.  

As best A.C. could recall, these events oc­curred in March 1996.  T.C.'s mother and stepfa­ther testi­fied that, based upon when they "ground­ed" T.C. for staying out too late, the events at Ratt's trailer that T.C. testi­fied about apparently oc­curred in March and early May 1996.  

Defendant testified on his own behalf and denied committing any of the alleged offenses.  On this evidence, the trial court found defendant guilty of all four charges.

II. ANALYSIS

A. Sufficiency of the Evidence

Defendant first argues that the State failed to prove him guilty beyond a reasonable doubt of the three counts of predato­ry crimi­nal sexual assault of a child and aggravated criminal sexual abuse.  Citing 
People v. Garrett
, 281 Ill. App. 3d 535, 544-45, 667 N.E.2d 130, 136 (1996), defendant contends that to prove predatory criminal sexual assault of a child, the State needed to prove beyond a reason­able doubt the 
intrusion
 of any part of the body of one person into the sex organ of another; the mere touching of the victim's sex organ is not sufficient.  

In response, the State concedes defendant's point that intrusion, not mere touching, is required to sustain his convic­tion, but the State contends that the evidence, when viewed as a whole, proved intrusion beyond a reasonable doubt.  The State points out that although the six-year-old victim, J.G., testified that he was wearing clothes when defen­dant stuck his finger in J.G.'s anus, J.G. explained that both his pants and under­pants had holes in them that allowed defendant to perform this act.  Additional­ly, other deficiencies in J.G.'s testimony--such as his inability to recall dates and his confusion about where the incident occurred--are all matters which the trier of fact--here, the experienced trial judge--no doubt considered when deciding whether the State had proved these charges beyond a reasonable doubt.  

The State also contends that A.C.'s testimony was sufficient to prove defendant guilty of aggravated criminal sexual abuse and that the State was not required to provide corroboration for her testimony.  We agree.

In addition, defendant's claim that T.C. cannot be be­lieved because of the lack of medically corroborating evidence is not persua­sive.  First, no such evidence could be expected regarding T.C.'s claim that defendant forced him to engage in oral sex.  Second, given T.C.'s testimony that at least a month passed from the last incident until the police were contacted, we doubt that any medical evidence could then be forthcoming to corroborate T.C.'s claim regarding anal sex.  Last, medical evidence is not required to sustain a conviction for criminal sexual assault.  
People v. Fryer
, 247 Ill. App. 3d 1051, 1058, 618 N.E.2d 377, 382 (1993).

When a defendant on appeal challenges the sufficiency of the evidence to sustain his conviction, the question for the reviewing court is whether 
any
 rational trier of fact, viewing the evidence in the light most favorable to the prosecu­tor, could have found the essential elements of the crime proved beyond a reasonable doubt.  
People v. Brown
, 169 Ill. 2d 132, 152, 661 N.E.2d 287, 296 (1996).  Viewing the evidence in the record before us in accordance with this standard, we conclude that the trial court, acting as the trier of fact in this case, could have found the essential elements of the crimes of which defendant was convicted proved beyond a reason­able doubt.

B. Defendant's Claim That His Conviction Should Be Reversed

Because the Supreme Court Has Declared Unconstitutional

the Statute Which Created the Offense of Predatory 

Criminal Sexual Assault of a Child 

Defendant next argues that his conviction of three counts of preda­to­ry criminal sexual assault of a child under section 12-14.1 of the Crimi­nal Code of 1961 (Code) (720 ILCS 5/12-14.1 (West 1996)) must be reversed because the statute which created that offense, Public Act 89-428 (Pub. Act 89-428, §260, eff. December 13, 1995 (1995 Ill. Laws 4453, 4506)), has been de­clared uncon­sti­tu­tional.  Defen­dant cor­rect­ly points out that the Supreme Court of Illinois in 
Johnson v. Edgar
, 176 Ill. 2d 499, 518, 680 N.E.2d 1372, 1381 (1997), concluded that Public Act 89-428 was unconsti­tutional in its entirety because it violated the single subject rule of the Illinois Constitution.

Defendant further argues that the effect of the supreme court's decision in 
Johnson
 is to leave the law in force as it existed prior to the adoption of the unconstitutional statute.  In other words, because Public Act 89-428 is unconstitutional, the statute it created is void 
ab
 
initio
.  
People v. Gersch
, 135 Ill. 2d 384, 390, 553 N.E.2d 281, 283 (1990).  Defendant claims that because the Code prior to the enactment of Public Act 89-428 contained no such offense of predatory criminal sexual assault of a child, his conviction of that offense is void and must be re­versed.  

Defendant concedes that Public Act 89-462 (Pub. Act 89-462, §260, eff. May 29, 1996 (1996 Ill. Laws 588, 642)) in effect reen­act­ed section 12-14.1 of the Code, to again place the offense of predatory crimi­nal sexual assault of a child in the Code, but he asserts that this later enactment does not apply to his case.  720 ILCS 5/12-14.1 (West 1996).  Although Public Act 89-462 became effective on May 29, 1996, the charges in this case alleged that defen­dant commit­ted the offense of preda­tory crimi­nal sexual assault between February 1, 1996, and June 10, 1996, and defendant contends that the record indicates that the inci­dents in question likely occurred around or during spring 1996, before the effective date of Public Act 89-462 of May 29, 1996.  We agree.  Thus, defen­dant con­tends that to apply the later-enacted Public Act 89-462 to his conduct in this case would violate the 
ex
 
post
 
facto
 clauses of the United States and Illinois Constitu­tions.  U.S. Const., art. I, §§9, 10; Ill. Const. 1970, art. I, §16.

The State responds that this court should uphold defendant's convic­tion because (1) Public Act 89-462, which reenacted the offense of predatory criminal sexual assault of a child, consti­tut­ed "cura­tive legislation" that validated the legislature's earlier action of enact­ing section 12-14.1 of the Code as part of Public Act 89-428; and (2) this court can simply change the name of the offense of which defen­dant was convicted from preda­tory criminal sexual assault of a child to aggravated crimi­nal sexual assault because the nature and elements of these two offenses are identical, and the name and statutory designa­tion of the offenses constitute a mere formali­ty.  We disagree with the State's first argument but agree with its second.  

Responding to the State's first argument, we note that the State cites no authority involving a situa­tion like the present case, involving the creation of a sub­stan­tive crimi­nal statute.  All of the State's cases concern 
proce­dural
 issues and are thus totally inapposite.  This dis­tinc­tion is criti­cal because a sub­stan­tive crimi­nal statute defining criminal conduct must be "on the books" before the State may interfere with a person's liberty because he engaged in that conduct.  No amount of "cura­tive legis­la­tion" can be permit­ted to contravene this most funda­mental of our American legal tradi­tions.  

We find the State's second argument persuasive because of the unique statutory history of (1) section 12-14.1 of the Code (720 ILCS 5/12-14.1 (West 1996)), defining predatory crimi­nal sexual assault of a child, and (2) section 12-14 of the Code (720 ILCS 5/12-14 (West 1994)), defining the offense of aggra­vat­ed crimi­nal sexual assault before the enact­ment of Public Act 89-428.  Public Act 89-428 not only created the offense of preda­to­ry criminal sexual assault of a child, but it also amended section 12-14 of the Code, which defined aggravated criminal sexual as­sault, to delete from that definition certain conduct which in turn became part of the defini­tion of predatory criminal sexual assault of a child.  Pub. Act 89-428, §260, eff. December 13, 1995 (1995 Ill. Laws 4453, 4505-06).  Specif­i­cally, prior to the enact­ment of Public Act 89-428, section 12-14(b)(1) of the Code read as fol­lows:  

"(b) The accused commits aggravated crim­i­nal sexual assault if:

(1) the accused was 17 years of age or over and com­mits an act of sexual penetra­tion with a victim who was under 13 years of age when the act was com­mitted."  720 ILCS 5/12-14(b)(1) (West 1994).  

Section 12-14(d) of the Code provided that a convic­tion of aggravated criminal sexual assault is a Class X felony (720 ILCS 5/12-14(d)(West 1994)).

Section 260 of Public Act 89-428 not only added section 12-14.1 to the Code, but also deleted the above language from the defini­tion of aggravated criminal sexual assault.  Pub. Act 89-428, §260, eff. December 13, 1995 (1995 Ill. Laws 4505-06).  The legis­la­ture instead chose to include that conduct within section 12-14.1(a)(1), defining predatory criminal sexual assault of a child, which reads as follows:  

"(a) The accused commits predatory crim­i­nal sexu­al assault of a child if:

(1) the ac­cused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was com­mitted."  720 ILCS 5/12-14.1(a)(1) (West 1996).  

Section 12-14.1(b) of the Code pro­vided that a person who commit­ted predatory criminal sexual assault of a child as defined in subsec­tion (a)(1) commits a Class X felony (720 ILCS 5/12-14.1(b) (West 1996)).

The new offense of predatory criminal sexual assault of a child, as defined in section 12-14.1 of the Code, also con­tained a provision that required a sentence of not less than 50 years in prison for a person who committed the conduct described in subsection (a)(1), and who caused great bodily harm to the victim that either resulted in permanent disability or was life threat­ening.  720 ILCS 5/12-14.1(a)(2), (b) (West 1996).  Howev­er, because neither of these aggravating circum­stances is present in this case, defendant was convicted of a "standard" Class X felony.  

A comparison of section 12-14(b)(1) of the Code (720 ILCS 5/12-14(b)(1) (West 1994)), defin­ing aggravated criminal sexual assault before it was amended by Public Act 89-428, and section 12-14.1(a)(1) (720 ILCS 5/12-14.1(a)(1) (West 1996)), defin­ing preda­tory crimi­nal sexual assault of a child, as added by Public Act 89-428, reveals that these two offenses possess 
exactly
 the same elements and provide for 
exactly
 the same penalty.

We earlier noted defendant's argument that because Public Act 89-428 is unconstitutional in its entirety, the effect of the supreme court's decision in 
Johnson
 is to leave the law in force as it existed prior to the adoption of the unconstitutional statute.  Because we agree with that argument, we con­clude that just as Public Act 89-428 failed to establish the new offense of predatory criminal sexual assault of a child, it 
equally
 failed to amend section 12-14 of the Code by deleting therefrom a definition of aggravated criminal sexual assault which described the 
conduct
 of which defendant was convicted in this case.  

To phrase the matter another way, this court's focus should be on the conduct defendant was convict­ed of engaging in--
by
 
whatever
 
name
--and not on either the section number of the statute or its name that the parties may have believed de­scribed that conduct.  We find support for this conclu­sion by noting that defendant, when accused of committing preda­tory criminal sexual assault of a child because--the State alleged--he was 17 years of age and committed an act of sexual penetration with victims under 13 years of age when the act was committed, would prepare to meet the State's allegations as set forth in the charges.  The 
precise
 
name
 of the charges is of little moment.  Accordingly, we find no prejudice to defendant in our granting the State's request to change the designation of his convictions from three counts of predatory criminal sexual assault of a child under section 12-14.1(a)(1) of the Code (720 ILCS 5/12-14.1(a)(1) (West 1996)) to three counts of aggra­vated crimi­nal sexual assault under section 12-14(b)(1) of the Code (720 ILCS 5/12-14(b)(1) (West 1994)).  Fur­ther, our grant­ing the State's request to amend the trial court's judgment and sen­tencing order does not affect defen­dant's sen­tences because both crimes are Class X felo­nies.  

Accordingly, under the powers this court possesses pursuant to Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we order on remand that the trial court's judgment and sentencing order be amended to reflect that defendant stands convicted of three counts of aggravated criminal sexual assault, not preda­to­ry criminal sexual assault of a child.  

C.  Credit Against the Sentence

Defendant also argues that the trial court erred by failing to apply sen­tenc­ing credit of 312 days against all four of his consecu­tive sentences.  Specifically, he contends that the supreme court's decision in 
People v. Robinson
, 172 Ill. 2d 452, 459, 463, 667 N.E.2d 1305, 1308, 1310 (1996), required the court to apply defendant's credit to all four sen­tences.  We dis­agree.

First, we note that defen­dant has for­feit­ed this issue by failing to file a postsentencing motion, as re­quired by section 5-8-1(c) of the Unified Code of Corrections (Unified Code), if he wishes to chal­lenge some aspect of his sentence on appeal.  730 ILCS 5/5-8-1(c) (West 1996); see 
People v. Reed
, 177 Ill. 2d 389, 393-95, 686 N.E.2d 584, 586-87 (1997).  

However, even if we did not find forfeiture present, we note that in 
Feazell v. Wash­ing­ton
, 291 Ill. App. 3d 766, 768, 684 N.E.2d 1052, 1053 (1997), this court held that 
Robin­son
 does not apply when a defendant is subject to consecu­tive sen­tences, as is defendant here.  We decline defendant's request to recon­sid­er our deci­sion in 
Feazell
.

D. Truth-In-Sentencing

Last, defendant argues that the trial court erred by apply­ing the truth-in-sen­tenc­ing provi­sions of section 3-6-3 of the Unified Code (730 ILCS 5/3-6-3 (West Supp. 1995)) to his sen­tence.  Specifically, he contends that the truth-in-sentencing provisions of the Unified Code--which bar him from receiving credit for good conduct--violate the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)).  We agree.

This court recently addressed the same issue in 
People v. Pitts
, No. 4-97-0071, slip op. at 13 (March 2, 1998), ___ Ill. App. 3d ___, ___, ___ N.E.2d ___, ___, where we held that Public Act 89-404 (Pub. Act 89-404, eff. August 20, 1995 (1995 Ill. Laws 4306)) vio­lates the single subject rule and is there­fore inval­id.  Accord­ingly, section 3-6-3 of the Unified Code (730 ILCS 5/3-6-3 (West 1994)), as it existed before Public Act 89-404 (Pub. Act 89-404, §40, eff. August 20, 1995 (1995 Ill. Laws 4323-26)), applies to defen­dant, and he is eligible for day-for-day good-time credit.  

We note that the State argues that if we were to find Public Act 89-404 unconstitutional, then we can still affirm the application of the truth-in-sentencing provisions of section 3-6-3 of the Unified Code to defendant's sentence because the legis­lature reenacted that section in Public Act 89-462, effective May 29, 1996 (Pub. Act 89-462, §280, eff. May 29, 1996 (1996 Ill. Laws 588, 655-56)).  We dis­agree be­cause, as dis­cussed previ­ous­ly, the record shows that defendant committed the offenses he was con­vict­ed of during spring 1996, before the effec­tive date of Public Act 89-462.

III.  CONCLUSION

For the reasons stated, we affirm the trial court's judgment and remand with directions that the court amend (1) the judgment and sentencing order to reflect that defendant stands convicted of three counts of aggravated criminal sexual assault, not preda­to­ry criminal sexual assault of a child, and (2) the sen­tenc­ing order to reflect that defen­dant is eligi­ble for day-for-day good-time credit as provid­ed in section 3-6-3 of the Unified Code prior to any "truth-in-sentenc­ing" amendments added there­to.

Affirmed as modified and remanded with direc­tions.

GARMAN, P.J., and KNECHT, J., concur.