SIXTH DIVISION
April 25, 2008

No. 1-06-3348

| | | |
|---|---|---|
| ALBERT C. HANNA, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County |
| | ) | |
| v. | ) | 03 CH 05933 |
| | ) | |
| THE CITY OF CHICAGO, a Municipal Corporation, | ) | Honorable |
| | ) | David R. Donnersberger, |
| Defendant-Appellee. | ) | Judge Presiding |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

In 1999, Albert C. Hanna sued the City of Chicago, complaining that real property he owned in the Lincoln Central neighborhood was unconstitutionally downzoned from R5 to SD-19 by the city council's amendment of the municipal zoning ordinance. Although the circuit court dismissed Hanna's first amended complaint for failure to state a claim and failure to give notice to all property owners within 250 feet of the property, we reversed the ruling in part and remanded the cause in mid 2002 for further proceedings. *Hanna v. City of Chicago*, 331 Ill. App. 3d 295 (2002), *appeal denied*, 201 Ill. 2d 566 (2002). On remand, Hanna twice stated in written opposition to motions filed by the City that the "ultimate" and "effective" relief he was seeking was reversion to the R5 category, or its current equivalent, RM5. In 2006, the city council rezoned Hanna's neighborhood to RM5 and the circuit court dismissed his action as moot. Hanna argues his action is not moot or should be addressed under the public interest exception to the mootness doctrine.

The following facts come from our prior opinion and the record currently on appeal. The

1-06-3348

Lincoln Central neighborhood is north of downtown Chicago in the 43rd aldermanic ward, and is generally bounded on the west by Halstead Street, on the northeast by Lincoln Avenue, on the southeast by the former Ogden Avenue, and on the south by North Avenue. There are at least 3,500 dwelling units within its boundaries. Hanna's property consists of four lots located at 1742-50 North Mohawk Street. He purchased the lots in 1971 and erected a five-story brick apartment building containing 26 units. At the time, the neighborhood was zoned R5, with no building height restrictions, and the minimum lot area (MLA) per dwelling was 400 square feet with a maximum floor area ratio (FAR) of 2.2 (allowing construction of buildings roughly 2.2 times the size of the lot).

The zoning remained R5 until 1998, when the city council amended the municipal zoning ordinance with an "overlay district" applicable to Lincoln Central called the "Lincoln Central Special District" or SD-19, which enhanced the restrictions on new construction in the neighborhood. Under SD-19, the building height was limited to 43 feet, the MLA was increased to 1,000 feet, and the FAR was reduced to 1.7. In practical terms, the rezoning reduced the size and bulk of new buildings and decreased the density of new dwelling units. According to Hanna, the 1998 rezoning was done at the urging of various property owners who formed a neighborhood association known as the Lincoln Central Association.[1] On June 4, 1999, Hanna

[1] Hanna does not reside in the 26-unit apartment building, but instead makes his home less than two miles north in a three-story single-family residence at 541 West Deming Place. Hanna brought a separate action against the City when the Deming Place property was rezoned in 1997 from R5 to R4. Hanna prevailed in the Deming Place rezoning action; however, his

2

1-06-3348

began the current lawsuit, alleging that the rezoning to SD-19 violated his rights under the Illinois Constitution. Hanna indicated he did not intend to redevelop his property, but the rezoning rendered his Mohawk Street apartment building a nonconforming structure and deprived him of the highest and best possible use of his property. Hanna's lawsuit had been pending for five years when the City did away with SD-19, first by adopting on May 27, 2004, a new Chicago Zoning Ordinance which abolished all "R" zoning categories in Chicago in favor of new categories (Chicago Municipal Code §17-1-1406-A (eff. August 1, 2004)), and later that year, on November 3, 2004, by recategorizing the neighborhood as RM4.5. Hanna, however, amended his complaint, for the seventh time, in order to add claims against the 2004 rezoning to RM4.5. As we stated earlier, when the City filed motions for partial summary judgment and dismissal of Hanna's seventh amended complaint, he responded that the "effective" and "ultimate" relief he had been seeking was reversion to R5 or its current equivalent RM5. More

_____

petition for approximately $1 million in attorney fees and $160,000 in costs was denied, and we rejected his appeal. *Hanna v. City of Chicago*, No. 1-01-3093 (2005) (unpublished order under Supreme Court Rule 23), *appeal denied*, 215 Ill. 2d 596 (2005). Hanna also unsuccessful sued to recover those fees and costs in federal court. *Hanna v. City of Chicago*, No. 03-C-2321 (N.D. Ill., August 27, 2003). He also turned to the courts in 1987 when he sued his Deming Place neighbor to enforce the subdivision's 50-foot building setback line created in 1860. *Hanna v. American National Bank & Trust Co. of Chicago*, 266 Ill. App. 3d 544 (1994), *appeal denied*, 158 Ill. 2d 551 (1994). Hanna owns a 24-unit apartment building at 1216-1220 North Dearborn Avenue which is not affected by the zoning for Lincoln Central or Deming environs.

3

specifically, in a response brief filed January 28, 2005, to the City's motion for partial summary judgment, Hanna stated:

> "[I]f the Court finds both [RM4.5] *and* SD19 invalid, the zoning
>
> will revert back to its pre-SD19 zoning of R5 (or its current
>
> equivalent of RM5), by operation of law.
>
> This is the ultimate relief Hanna has been seeking all along,
>
> and is thus 'effective' for him."  (Emphasis in original.)

Hanna repeated these statements in the response brief he filed May 27, 2005, to the City's motion to dismiss and strike certain counts in Hanna's then-current pleading.

In late 2005, the alderman of the 43rd Ward sought to change the neighborhood's zoning from RM4.5 to RM5, which would increase the maximum building height to 45 feet and the FAR to 2.0.  After notification letters had been sent out by the City and a community meeting was convened and attended by approximately 80 residents, the alderman sent property owners a second notification, which included more detail and a request for further community input regarding the rezoning.  The alderman indicated the Lincoln Central neighborhood association "worked very hard" to help establish the SD-19 zoning and that the City was spending considerable public resources defending the classification in litigation with an unnamed plaintiff. Six years of litigation had been "protracted and expensive" and a trial would add to those costs and possibly result in "an unwelcome decision if the plaintiff were to prevail."  The City's Department of Planning and Development and Department of Law were recommending that the litigation be resolved expeditiously by rezoning to RM5, and the alderman had begrudgingly

agreed, even though "[m]any people in the neighborhood would like to see more restrictive not less restrictive zoning regulations." According to notes from the December 13, 2005, meeting of the zoning committee of the Lincoln Central Association, the neighborhood organization supported the proposed rezoning, with the caveat that if "the lawsuit continue[d] in spite of this upzoning, [the group] would request that zoning be returned to RM4.5." On January 11, 2006, the city council passed the RM5 zoning amendment, which became effective on February 8, 2006.

Hanna, nevertheless, filed an eighth amended complaint, adding claims against the 2006 rezoning and restating his claims against the 1998 and 2004 changes. In 3 of the 11 counts, he sought judicial declarations that one or all of the rezonings violated his constitutional rights to substantive and procedural due process and equal protection under the law and constituted impermissible spot zoning, and in the remaining eight counts, he sought to permanently enjoin enforcement of the rezonings. The City responded with a motion to dismiss the action, arguing Hanna's claims had been mooted by the latest rezoning and that the courts were unable to grant him any further relief. The City cited Hanna's statements regarding his "ultimate" and "effective" relief, characterized these statements as judicial admissions, and argued that Hanna had obtained what he had been seeking. The City further argued that in any event, the court could not grant Hanna any additional relief because the original R5 zoning category had been abolished by the City's adoption of the new Chicago Zoning Ordinance, which Hanna was not challenging,[2] and no existing zoning category would grant rights equivalent to the old R5

---

[2] Hanna did attempt to challenge the constitutionality of the new Chicago Zoning

classification. In response, Hanna conceded, "The City has, technically, 'mooted' Hanna's personal claim for a rezoning to R-5, or RM-5," but he contended his statements identifying RM5 as his "ultimate relief" were mere legal conclusions instead of judicial admissions, and that his action was not moot because the City had not met its burden of "an absolute clear showing that the wrongful conduct alleged [could] not be expected to recur." Hanna also contended the 2006 rezoning amounted to "legislative sl[e]ight of hand" aimed solely at ending his lawsuit, which he argued was an improper, unconstitutional motivation. In the alternative, Hanna argued his action should be addressed under the public interest exception to mootness, in order to give future guidance to City officials regarding the constitutionality of the municipality's zoning policies and practices. The circuit court granted the City's motion to dismiss on October 17, 2006, ruling that the statements regarding Hanna's relief were binding judicial admissions, that the 2006 rezoning effectively granted Hanna all his requested relief and was not done for an improper purpose, that the 2006 rezoning mooted the action because the City was not asserting the constitutionality of the 1998 and 2004 rezoning or its right to enforce those rezonings in the future, and that the action did not warrant application of the public interest exception to the mootness doctrine.

The granting of a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil

_____

Ordinance, which in relevant part rezoned all R5 property to RM5. That separate action, *Hanna v. City of Chicago*, No. 06-CH-23366, was dismissed by Judge Kathleen M. Pantle on June 12, 2007, due to Hanna's admitted failure to comply with the notice provision in section 11-13-8 of the Illinois Municipal Code (65 ILCS 5/11-13-8 (West 2006)). Hanna is currently appealing the dismissal (No. 1-07-1960) and recently filed his opening appellate brief.

1-06-3348

Procedure is reviewed *de novo*. *Sadler v. Creekmur*, 354 Ill. App. 3d 1029, 1039 (2004); 735 ILCS 5/2-619(a)(9) (West 2006). Dismissal pursuant to section 2-619(a)(9) should be entered when the plaintiff's claim is barred by "affirmative matter avoiding the legal effect of or defeating the claim" (735 ILCS 5/2-619(a)(9) (West 2006)), such as when a defense is presented that "negates an alleged cause of action completely." *ChiCorp, Inc. v. Bower*, 336 Ill. App. 3d 132, 136 (2002). When the issues have ceased to exist and there is no longer an actual controversy between the parties, the alleged cause of action has been negated and should be dismissed as moot. *People* ex rel. *Newdelman v. Weaver*, 50 Ill. 2d 237, 241 (1972). Mootness occurs once the plaintiff has secured what he basically sought and a resolution of the issues could not have any practical effect on the existing controversy. *Newdelman*, 50 Ill. 2d at 241. A mooted action should be dismissed out of "concern that parties to a resolved dispute lack a sufficient personal stake in the outcome to assure that there is an adversarial relationship that sharpens the presentation of issues upon which the courts largely depend for illumination of difficult questions." *Fisch v. Loews Cineplex Theatres, Inc.*, 365 Ill. App. 3d 537, 539 (2005).

In *ChiCorp*, for example, the plaintiff filed suit against the Illinois Department of Revenue seeking income taxes and interest paid under protest and an order stating that the statute which required these payments was unconstitutional. *ChiCorp*, 336 Ill. App. 3d at 135. The Department prevailed on a section 2-619(a)(9) motion to dismiss the action on the basis of mootness, in which it stated it would return the money paid, plus interest, and would not attempt to recover those funds in the future from the plaintiff. *ChiCorp*, 336 Ill. App. 3d at 135-36; 735 ILCS 5/2-619(a)(9) (West 2000). On appeal, the plaintiff contended it was nonetheless entitled

7

1-06-3348

to a judicial determination of the correctness of the tax statute, regardless of the Department's decision not to assess the tax. *ChiCorp*, 336 Ill. App. 3d at 136. The appellate court rejected this contention because the pleadings and facts of the case showed that the parties were in agreement about the disposition of the money, which meant "there was no longer an actual case or controversy existing between the parties." *ChiCorp*, 336 Ill. App. 3d at 137. A decision regarding the additional issues, when there was no longer a controversy before the court, would have resulted in an improper, advisory opinion. *ChiCorp*, 336 Ill. App. 3d at 137.

Another relevant example is *Duncan Publishing, Inc. v. City of Chicago*, 304 Ill. App. 3d 778, 780-82 (1999), where a publisher sought the production of certain public records from various departments of the City of Chicago pursuant to the Illinois Freedom of Information Act (5 ILCS 140/1 *et seq*. (West 1996)), and received the last of them after filing suit. The appellate panel affirmed the entry of summary judgment for City, reasoning that any controversy over the City's production of documents "clearly ceased to exist once the City tendered those documents to [the publisher]." *Duncan Publishing*, 304 Ill. App. 3d at 782. Although the plaintiff also sought costs and attorney fees, the appellate court characterized the request as an ancillary issue which did not rescue the substantive issue from mootness. *Duncan Publishing*, 304 Ill. App. 3d at 782-83.

Hanna's first specific contention is that a defendant cannot render an action moot merely by voluntarily ceasing the challenged conduct and bears the burden of making an "absolutely clear" showing that the conduct could not reasonably be expected to recur. *Cohan v. CityCorp*, 266 Ill. App. 3d 626, 629 (1993). See also *Fryzel v. Chicago Title & Trust Co.*, 173 Ill. App. 3d

8

788, 794 (1988) (mere voluntary cessation of allegedly unlawful conduct cannot moot a case, as the defendant would then be free to resume the practices complained of). He points to the fact that the Lincoln Central neighborhood group supported the 2006 rezoning to RM5 and contends the group has "threatened to rezone his Property again if the rezoning *** does not end [this litigation]." He also emphasizes that his real estate has been rezoned three times in the last decade and cites a statement Paul Woznicki made when he was deposed in connection with this suit on July 29, 2004, "[W]hen I was the zoning administrator, they were up 400 [*sic*] -- 450 amendments made just to the maps, and I heard that that's mushroomed to six or seven hundred or eight hundred annually." Hanna concludes the City failed to meet its burden and that the motion to dismiss his 11-count complaint should have been denied on this point alone. We do not find Hanna's argument persuasive because the facts and relevant case law are not in his favor.

Hanna's allegations regarding the 1998 and 2004 rezonings are indisputably moot because those zoning ordinances no longer exist and the City has expressed no intention to enforce them. Pertinent here is *Village of Palatine v. LaSalle National Bank*, 112 Ill. App. 3d 885, 887-88 (1983), in which a real estate developer challenged a municipal flood plain ordinance and building height ordinance which together prevented the construction of phases II and III of the Baybrook apartment complex on a 35-acre tract in Palatine, Illinois. The trial judge declared both ordinances invalid as applied to the Baybrook project and enjoined the municipality from enforcing them. *Village of Palatine*, 112 Ill. App. 3d at 890. The municipality appealed, but also amended its flood plain ordinance by adopting the most recent Illinois

Department of Transportation Flood Plain maps. *Village of Palatine*, 112 Ill. App. 3d at 890.

Under those maps, the Baybrook construction project was no longer in a designated flood plain.

*Village of Palatine*, 112 Ill. App. 3d at 890. The change ended the appeal as to the flood plain

ordinance, because "courts will not determine the question of the validity of an ordinance which

is no longer in force and which can not be applied to the complaining parties." *Village of

Palatine*, 112 Ill. App. 3d at 891. The only issue to be decided was the validity of the

unamended building height ordinance. *Village of Palatine*, 112 Ill. App. 3d at 892. Given that

the 1998 and 2004 zoning ordinances no longer exist, we should not determine their validity.

Furthermore, Hanna is relying on cases which are readily distinguishable. In the first case, the

defendant banks agreed to waive the service fee at issue, but "maintain[ed] the right to assess the

very same charge" in the future." *Cohan*, 266 Ill. App. 3d at 630. In the second case, the

defendant trust company agreed to let state examiners review certain account records, but

"continue[d] to insist upon the right to withhold such accounts" and "inescapably le[ft] open the

possibility that [it might] refuse a similar examination in the future." *Fryzel*, 173 Ill. App. 3d at

794. In contrast, the current defendant is not asserting the constitutionality of the 1998 or 2004

rezoning to Hanna's property, nor its right to enforce those rezonings in the future. The present

appeal is also analogous to the one described in *Fisch*, in which the plaintiffs sought an

injunction requiring a national chain of movie theaters to publish the approximate length or the

specific start time of commercial advertisements, movie previews, and feature films, so that

consumers would not unwittingly arrive early and become a captive audience to advertisers.

*Fisch*, 365 Ill. App. 3d at 537-38. The circuit court dismissed the action as one based on a *de*

*minimis* injury (*Fisch*, 365 Ill. App. 3d at 538), and the appellate court never reached the arguments regarding this ruling, because during the appellate process, any actual controversy ended when the national chain began publishing its movie listings with the statement that " 'the feature presentation will start 10 or 15 minutes after the published showtime.' " *Fisch*, 365 Ill. App. 3d at 539. Once the plaintiffs had secured what they sought -- reasonable notice of the true starting times of movies shown at the defendants' theaters -- the controversy ended. *Fisch*, 365 Ill. App. 3d at 540. Like Hanna, the plaintiffs argued their action was not moot, because without an injunction the national chain was free to reverse its policy at any point in time. *Fisch*, 365 Ill. App. 3d at 540. Nevertheless, the court did not find this argument persuasive because the national chain "ha[d] not asserted, insisted upon, or maintained the right to omit reasonable notice of the actual starting times from their movie listings in the future," and had instead publicly announced its new policy and notified an Illinois legislator of the policy's implementation. *Fisch*, 365 Ill. App. 3d at 540. Considering the facts in light of this precedent, we conclude the voluntary cessation doctrine does not aid Hanna's appeal regarding the 1998 and 2004 rezonings.

With respect to the 2006 rezoning, Hanna is relying primarily on the meeting minutes of the Lincoln Central neighborhood association which indicate that if rezoning to RM5 did not end this lawsuit, the group would ask for their neighborhood be returned to the RM4.5 designation. The meeting minutes do not help Hanna because the group will not act on its intention if we affirm the trial court's mootness finding. More importantly, the community association does not have the power to rezone the neighborhood and it does not speak for the City. The fact that the

city council has rezoned Lincoln Central and other neighborhoods in the recent past does not suggest the city council intends to rezone Lincoln Central in the future, particularly when the current rezoning has resulted in the dismissal of what the local alderman deemed a "protracted and expensive" lawsuit with one of Lincoln Central's property owners. Furthermore, while the case Hanna cites to, *Cohan*, characterizes the showing required of a defendant as a "burden" (*Cohan*, 266 Ill. App. 3d at 629), case law illustrates that the task is not a difficult one. Rather than proving a negative -- that it is "absolutely clear that [the allegedly unlawful] behavior could not reasonably be expected to recur" (*Cohan*, 266 Ill. App. 3d at 629) -- it is enough for a public defendant to show that there is no basis for concluding it will " 'return to [its] old tricks once the coast is clear.' " *La Salle National Bank, N.A. v. City of Lake Forest*, 297 Ill. App. 3d 36, 45 (1998), quoting *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991). It has been said that "[w]hen the defendants are public officials, *** greater stock [is placed] in their acts of self-correction, so long as they appear genuine" (*Magnuson*, 933 F.2d at 565), and we read this statement to apply equally to the current municipal defendant. The City has made the necessary showing. Nothing in the record suggest this defendant has temporarily ceased offensive conduct only until "the coast is clear" (see *La Salle National Bank*, 297 Ill. App. 3d at 45 and the voluntary cessation doctrine does not aid Hanna's appeal regarding the 2006 rezoning to RM5.

Even though the specific controversy between Hanna and the City has been resolved, Hanna next insists "[a]fter seven years of litigation, and [incurring] over $1 million in litigation costs, [he] is entitled to a judicial resolution of his claims" and that the matter should not be

concluded without the entry of declaratory or permanent injunctive relief in his favor. In contrast to his earlier, concise statements regarding what constituted effective relief in this instance, Hanna now contends he is entitled to a broad, generally worded court order:

> " 'Effective relief' for Hanna is thus a finding, via injunctive and/or declaratory relief, that the City cannot excuse one unconstitutional act by engaging in another; that the City cannot downzone to satisfy the wishes of a few; that the City, without a comprehensive plan, cannot simply downzone property on a whim; that the City cannot enact zoning policies that deprive its citizens of reasonably affordable housing; that the City cannot enact zoning practices that decrease tax and other revenues while simultaneously increasing per capita taxes and debt; and that the City cannot respond to a citizen's court challenge by backing off its unconstitutional policies, inch-by-inch, until it has achieved its objective of creating neighborhoods accessible only to the rich, white[,] and influential."

Elsewhere in his brief, Hanna states:

> "The declaratory judgment and injunctive relief Hanna seeks will ostensibly include specific findings (a) that changing zoning to satisfy the wishes of a small community organization does not comport with constitutional guarantees of due process, (b) that

downzoning over and over again without the benefit of a comprehensive plan is harmful and wrong, (c) that zoning policies that perpetuate racial, social and economic segregation are unconstitutional, (d) that zoning without adequate study and planning is backwards, (e) that enacting zoning ordinances that deprive the City of desperately needed housing and population in order to create pockets of wealthy neighborhoods occupied by the rich, white and influential is wrong, (f) that the City must consider the fiscal impact of its zoning policies before choking off real estate, utility and other tax revenues (generated by people and housing) it so badly needs, while simultaneously increasing per capita taxes and costs of City services, and finally (g) that it is improper to back off a litigant's challenge by replacing one unconstitutional rezoning with another until the City can find a way to persuade the trial court that the plaintiff's claims are moot.
"

What Hanna characterizes as a "finding" or a "specific finding[]" is actually personal commentary about the way the City approaches property zoning and lawsuits. Instead of sharpening the issues, he now claims entitlement to court orders that vaguely encompass not only his Lincoln Central real estate, but also municipal zoning policies and practices in general, and even municipal litigation management. Hanna's request for declarations and injunctions that are

14

1-06-3348

imprecise and unworkable in practice suggests why litigation usually ends when the issues of a case become moot. See *Fisch*, 365 Ill. App. 3d at 539 ("parties to a resolved dispute lack a sufficient personal stake in the outcome to assure that there is an adversarial relationship that sharpens the presentation of issues"). We conclude that the city council, not the judiciary, has the authority, expertise, resources, and public input necessary to establish this jurisdiction's zoning policies and ordinances.

> " 'Courts are ill equipped to determine what the public policy
> should be. Seldom are all interested parties, all facts, and all issues
> present in a single case, where the court can rationally balance all
> the factors necessary to establish a policy good for society.
> Further, establishing public policy may entail the balancing of
> political interests. This is a function of the legislature, not the
> courts.' " *Board of Education of Dolton School District 14 v.*
> *Miller*, 349 Ill. App. 3d 806, 812 (2004) (holding that trial court's
> order directing board of education to build sidewalks on public
> rights-of-way for "public health and safety" violated the
> constitutional doctrine of separation of powers), quoting *Dixon*
> *Distributing Co. v. Hanover Insurance Co.*, 244 Ill. App. 3d 837,
> 852 (1993).

"When the legislature has declared, by law, the public policy of the [s]tate, the judicial department must remain silent, and if a modification or change in such policy is desired the law-

15

making department must be applied to, and not the judiciary, whose function is to declare the law but not to make it." *Collins v. Metropolitan Life Insurance Co.*, 232 Ill. 37, 44 (1908). Perpetuating this lawsuit so that Hanna may attempt to elevate his personal zoning policy preferences over Chicago's citizens and their elected officials is not an appropriate use of the judicial system.

Hanna's next contention is that the court erred when it determined the statements about Hanna's "ultimate" and "effective" relief amounted to judicial admissions. Hanna asks us to conclude these were merely arguments his attorney made in a certain context and that they did not amount to "concrete facts" within Hanna's personal knowledge. See, *e.g.*, *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998). He further argues that once the city council "changed the facts of this case" by rezoning Lincoln Central to RM5, he was "forced to amend his pleadings and the relief he sought, "in order to more specifically allege that the City's zoning practices and policies are unconstitutional."

We do not need to resolve whether the argumentative statements regarding Hanna's ultimate and effective relief constituted judicial admissions, as Hanna's latest pleading ("Eighth Amended Verified Complaint for Injunctive and Other Relief") clearly shows he was seeking declaratory judgments and injunctive relief to that effect. The pleading indicates Hanna wanted the 1998, 2004, and 2006 municipal zoning amendments applicable to the Lincoln Central neighborhood declared unconstitutional, and therefore invalid, so that his own Lincoln Central property would be restored to its preamendment designation of R5, or its current equivalent under the unchallenged citywide new Chicago Zoning Ordinance, RM5. After considering the

facts of this case, the pertinent principles, and the parties' arguments, we find that the circuit court properly dismissed Hanna's action as moot because there was no longer an actual case or controversy between the parties once the city council amended the municipal zoning ordinance to reflect the RM5 designation for the Lincoln Central neighborhood. Once the pleading and facts of this case showed that Hanna had secured the substantive relief he sought, which was to negate the effects of the three rezonings applicable to his residential neighborhood, the trial court properly declined to resolve the constitutional issues simply to establish precedent or to offer guidance for future actions.

Hanna further argues that even if the mootness doctrine is applied, we should invoke the public interest exception in order to resolve his constitutional arguments. Three criteria will determine whether the public interest exception is appropriate: (1) the question is of a public nature, (2) an authoritative resolution is desirable for the purpose of guiding public officers in the performance of their duties, and (3) the question is likely to recur. *Sharma v. Zollar*, 265 Ill. App. 3d 1022, 1028 (1994). A clear showing of each factor is necessary to bring a case within this exception, and the exception is invoked only on rare occasions (*ChiCorp*, 336 Ill. App. 3d at 139) involving "an extraordinary degree of public concern." *Sharma*, 265 Ill. App. 3d at 1028.

An analogous case is *Sharma*, in which a physician's action regarding the denial of his request to subpoena individuals during a disciplinary proceeding was rendered moot by the dismissal of the underlying charges against him. *Sharma*, 265 Ill. App. 3d at 1023. The physician's need for the requested subpoenas had been eliminated and his right to them became "theoretical and, thus, moot." *Sharma*, 265 Ill. App. 3d at 1028. In the appellate court, the

17

physician contended that while the status of his medical license was no longer in doubt, a controversy continued to exist regarding his due process rights to the requested subpoenas. *Sharma*, 265 Ill. App. 3d at 1026-27. However, the court refused to reach the constitutional rights issue, emphasizing that when it becomes "apparent that an opinion cannot affect the results as to the parties or controversy before it, the court should not resolve the question merely for the sake of setting a precedent or to govern potential future cases." *Sharma*, 265 Ill. App. 3d at 1027. See also *Sadler*, 354 Ill. App. 3d at 1040 ("a court should not resolve a question just to set precedent or to provide guidance for future actions"). The case failed the third criterion for employing the public interest exception because the physician's right to the issuance of subpoenas would not recur once the charges against him had been dismissed. *Sharma*, 265 Ill. App. 3d at 1029. Furthermore, while the general question of an applicant or licensee's right to the issuance of subpoenas might exist as to future litigants, the court held that that issue could be properly reviewed "at a later date, in the context of an actual controversy, when charges are pending and when effectual relief can be granted." *Sharma*, 265 Ill. App. 3d at 1029. The court contrasted the situation with *Roe v. Wade*, 410 U.S. 113, 125, 35 L. Ed. 2d 147 161, 93 S. Ct. 705, 713 (1973), where the question of abortion rights was addressed because the short gestation period of a human fetus meant the issue was capable of repetition to the plaintiff as well as the general public, yet evading review. *Sharma*, 265 Ill. App. 3d at 1029. Other cases found to satisfy the three factors and involve the requisite "extraordinary degree of public concern and interest" (*La Salle National Bank v. City of Chicago*, 3 Ill. 2d 375, 380 (1954)) concerned "life and death issues raised in the context of governmental action impending on religious beliefs,"

18

public health concerns, or the need to develop case law to guide public officials regarding issues such as involuntary commitments or the use of Department of Corrections facilities to house juveniles. *Sharma*, 265 Ill App. 3d at 1029.

We also find guidance in the zoning case discussed above concerning the Baybrook apartment construction project. There, the court declined to invoke the public interest exception to the mootness doctrine because (1) "any recurrence of the question of the validity of the [flood plain] ordinance would involve its application to [real] property other than Baybrook, with different physical characteristics and different proposed uses" and (2) a determination of the facial validity of the ordinance would have only limited utility in guiding the actions of public officials. *Village of Palatine*, 112 Ill. App. 3d at 891-92.

Based on these authorities, we find the public interest exception is not appropriately applied to Hanna's zoning action because the issues presented are not likely to recur to him on a repeated basis. If it is true, as he argues, it is "a virtual certainty" the City will subsequently "engage[] in the type of arbitrary and irrational zoning policies and procedures challenged in Hanna's Complaint," then the City's conduct can be reviewed in the context of an actual controversy, when the plaintiff has a stake in the outcome and effectual relief can be granted. *Sharma*, 265 Ill. App. 3d at 1029.

Hanna mistakenly contends "a similar scenario" justified invocation of the public interest exception in *Johnson v. Edgar*, 176 Ill. 2d 499 (1997). That case is dissimilar, in part because it involved legislation which two circuit court judges had separately determined was enacted in violation of the constitutional prohibition on bills that encompass more than one subject.

*Johnson*, 176 Ill. 2d at 502. After the judges permanently enjoined enforcement of the public act, the two cases were consolidated on appeal to the supreme court. *Johnson*, 176 Ill. 2d at 502. During the appeal, the legislation was partially amended, which ordinarily would have mooted the appeal. *Johnson*, 176 Ill. 2d at 512. The parties agreed, however, that the criteria for the public interest exception were satisfied. *Johnson*, 176 Ill. 2d at 513. Furthermore, the issue had been raised in at least one other case that was already pending in the trial court and the portion of the legislation which was not amended was still open to challenge on the same basis. *Johnson*, 176 Ill. 2d at 513. "Consequently, resolution of the [constitutional] challenge by [the supreme] court [would] be of assistance to both the lower courts and the public officers who [were] faced with questions regarding the validity of the Act's many provisions." *Johnson*, 176 Ill. 2d at 513. In contrast, the present action was not tried on the merits and was rendered moot during the pleading stage when the plaintiff received the precise relief he was seeking. In addition, only the plaintiff, who has turned to the state and federal courts numerous times, contends the issues are still worth litigating. Also, there is no indication in the record on appeal that the three rezonings of the plaintiff's neighborhood are the basis of some other plaintiff's complaint and should be addressed on an urgent basis to assist the trial court or public officials dealing with life-or-death issues, public health concerns, or other time-sensitive matters.

Moreover, Hanna's reliance on *Berrios v. Rybacki*, 190 Ill. App. 3d 338 (1989), *Morrison v. Chicago Board of Education*, 188 Ill. App. 3d 588 (1989), and *People* ex rel. *Wallace v. Labrenz*, 411 Ill. 618 (1952), all nonzoning cases, is similarly misplaced. As the trial judge aptly remarked, these cases involved questions of significant importance affecting the rights of a great

20

number of citizens and questions that were highly likely to recur. *Berrios* presented a question of interest to every employee and employer litigating workers' compensation claims in Illinois: whether certain directives issued by the Illinois Industrial Commission were void because they violated the Illinois Administrative Procedures Act (Ill. Rev. Stat. 1987, ch. 127, par. 1001 *et seq.*) *Berrios*, 190 Ill. App. 3d at 344. *Morrison* "easily [came within] the public interest exception," because it concerned the minimum age for admission to public school in Illinois and thus affected potential kindergartners, as well as their families, and the school teachers and administrators. *Morrison*, 188 Ill. App. 3d at 590-92. The issue in *Labrenz* was whether parents could refuse on religious grounds blood transfusions for their critically ill infant and therefore implicated not only the balance between governmental action and the religious beliefs of individual citizens, but also presented a life-or-death issue which was likely to recur and become moot by ordinary standards before it could be addressed by the courts. *Labrenz*, 411 Ill. at 623. Hanna cannot show that the zoning classification of his neighborhood has comparably broad impact on the public at large and urgently requires authoritative resolution.

Finally, Hanna contends "the City rezoned to RM5 to get Hanna out of court" and he cites *Amoco Oil Co. v. Village of Schaumburg*, 277 Ill. App. 3d 926 (1995) for the proposition that it is unconstitutional as a matter of law to enact an ordinance in order to resolve a lawsuit. Hanna's argument begs the question as to how conscientious public officials could permissibly resolve litigation that requires legislative action. Nevertheless, he argues that it was a "critical fact" in *Amoco Oil* that the municipality's reason for legislating was to "get the case out of federal court." He urges this court to determine the City cannot legislate in order to end

21

litigation, and, thus, give him effective relief and provide future guidance to public officials regarding the constitutional bounds of their powers.

The City does not concede that its sole motivation for the 2006 rezoning was to end this lawsuit and contends that the alderman's December 2005 letter to neighborhood residents regarding the rezoning provides insight into the author's perspective, but does not indicate the entire the city council shares her views. Assuming for the purposes of argument that the letter reveals the motivation for the 2006 rezoning, the City contends *Amoco Oil* is both factually and legally distinguishable. *Amoco Oil*, 277 Ill. App. 3d 926.

We find the City's arguments persuasive. The alderman's letter does not suggest she is comprehensively stating her reasons for proposing the 2006 rezoning, nor does she purport to speak for the entire the city council. Moreover, Hanna is misstating *Amoco Oil*'s holding (*Amoco Oil*, 277 Ill. App. 3d 926), and the case is too different from the present matter to be controlling. The municipality in *Amoco Oil* first adopted an ordinance indicating it was taking 20% of the landowner's property without compensation, as a condition for granting a special use permit allowing the landowner to redevelop the lot. *Amoco Oil*, 277 Ill. App. 3d at 930. The landowner, however, objected to the conditional granting and filed suit in federal court. *Amoco Oil*, 277 Ill. App. 3d at 930. The federal judge denied the landowner's motion for a preliminary injunction, on the grounds that the landowner had a sufficient remedy at law for money damages, but nonetheless conveyed its inclinations about the merits of the lawsuit:

> "[I]f the public officials know that their actions are not supported
>
> by the law and persist anyway, driven by some impression that they

22

can attach these conditions because zoning ordinances constitute some kind of public favor to be dispensed, that is certainly against public policy." *Amoco Oil*, 277 Ill. App. 3d at 930.

Shortly thereafter, the municipality adopted an ordinance repealing the first ordinance, and the federal court dismissed the action. *Amoco Oil*, 277 Ill. App. 3d at 930-31. In other words, the municipality passed the repealing ordinance in an effort to deny the property owner any relief -- if the municipality had its way, the landowner would have neither the special use permit necessary to redevelop its property nor any legal recourse. The landowner filed suit in state court, challenging both the conditional granting and subsequent revocation of the special use permit. *Amoco Oil*, 277 Ill. App. 3d at 927. The evidence presented at trial led the state appellate court to conclude the municipality's attempted exaction of 20% of the property without just compensation was an unconstitutional taking. *Amoco Oil*, 277 Ill. App. 3d at 944. The court also agreed "that the repealer ordinance was merely a transparent litigation tactic used to divest the Federal court of continuing jurisdiction" (*Amoco Oil*, 277 Ill. App. 3d at 934) and that it was not a reasonable exercise of legislative authority to "repeal a zoning ordinance solely on the grounds that the putative holder of a special use permit failed to comply with an unconstitutional exaction of property" (*Amoco Oil*, 277 Ill. App. 3d at 945). Thus, *Amoco Oil* does not stand for the proposition that it is *per se* unconstitutional to legislate in order to resolve a lawsuit. Hanna has not only misstated the court's holding, but also cited authority with no factual resemblance to his own dispute with the City. Here, the City of Chicago did not attempt to take a portion of Hanna's Mohawk Street property without just compensation, deny him the ability to redevelop

the real estate, and deprive him to any legal recourse. Instead, the city council has given Hanna as much as possible under the current municipal zoning ordinance, conveyed what Hanna (or Hanna's attorney) deemed his effective and ultimate relief, and mooted the need for any further litigation about the zoning classification applicable to his Mohawk Street land. Thus, the more pertinent cases are ones such as *Village of Skokie v. Gianoulis*, 260 Ill. App. 3d 287, 298 (1994), *Thompson v. Cook County Zoning Board of Appeals*, 96 Ill. App. 3d 561, 572 (1981), *2700 Irving Park Building Corp. v. City of Chicago*, 395 Ill. 138, 147 (1946), and *Grand Trunk Western Ry. Co. v. Industrial Comm'n*, 291 Ill. 167, 172 (1919), all of which indicate the courts cannot inquire into the factors which motivated a legislative body to act; courts may only consider whether legislation has a reasonable relation to public health, comfort, safety and welfare, or is unreasonable, arbitrary, or fraudulent. Hanna's contention that the most recent rezoning was enacted to end lengthy, costly litigation does not implicate any of these concerns.

For these reasons, we find the circuit court properly rejected Hanna's invocation of the public interest exception to the mootness doctrine.

Having rejected all of the appellant's contentions, we affirm the dismissal of his action. Affirmed.

GORDON and O'MALLEY, concur.