2021 IL App (1st) 201400-U

No. 1-20-1400

Order filed June 16, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* Marriage of | ) | Appeal from the |
| | ) | Circuit Court of |
| RYMMA B., | ) | Cook County |
| | ) | |
|   Petitioner-Appellant, | ) | |
| | ) | No. 15 D3 30500 |
| and | ) | |
| | ) | |
| SAMVEL S., | ) | Honorable |
| | ) | Rossana P. Fernandez, |
|   Respondent-Appellee. | ) | Judge presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We dismiss this appeal as moot where the circuit court's temporary order being appealed from no longer is in effect, and therefore, it impossible for this court to grant effectual relief.

¶ 2    Following a judgment for dissolution of marriage between Rymma B. and Samvel S. in

April 2016, Rymma B. was given primary residential custody of their only child, E.S. For the next

four and a half years, E.S. lived with Rymma B. in Illinois, though Samvel, who lived in Michigan, had significant amounts of parenting time. In December 2020, during the height of the coronavirus pandemic, the circuit court entered a temporary order that directed E.S. to attend school in Michigan from January 2021 until June 4, 2021, because the local elementary school there was fully in-person and both the court and E.S.'s guardian *ad litem* believed that E.S. needed in-person learning to further her development. Following the court's order, Rymma petitioned this court for leave to appeal, which we granted. We also stayed the enforcement of the circuit court's order until further order of this court. By the time we entertained this appeal, the challenged order no longer was in effect. Because of this, we find this appeal is moot and no exception to the mootness doctrine applies. And therefore, for the foregoing reasons, we dismiss this appeal.

¶ 3                                    I. BACKGROUND

¶ 4       In January 2011, Rymma and Samvel married in Michigan. In March 2015, Rymma gave birth to their only child, E.S. Two months later, Rymma filed a petition for dissolution of marriage from Samvel. At the time she filed her petition, Rymma resided in Illinois and Samvel resided in Michigan. In July 2015, Rymma moved the circuit court for temporary custody of E.S., asserting that ever since E.S.'s birth, she had lived in Illinois with Rymma and that Rymma had been her primary and exclusive caretaker. Although the court granted Rymma temporary custody of E.S., it granted Samvel visitation and parenting time on alternating weekends.

¶ 5       Ultimately, in April 2016, the circuit court entered a judgment for dissolution of marriage that incorporated an allocation judgment of parental responsibilities and a parenting plan, which had been agreed to two months earlier. According to the allocation judgment, E.S.'s primary residence was to be with Rymma, but Samvel was to have regular parenting time with E.S. for approximately nine days each month. This arrangement was to last from 2016 to 2018, and the

parties agreed that they would review and re-evaluate the parenting time schedule on or around E.S.'s third birthday. Concerning E.S.'s education, they agreed that she would attend school in the district in which Rymma resided "unless the parties agree that she will attend a private, magnet, or charter school." Further, "[a]ny and all other major decisions regarding the primary and secondary education of [E.S.]" was to "be the joint decision" of both parents, and neither parent could "make a major decision without first consulting with and obtaining the express written agreement of the other" parent. If either parent felt that a change of school was in E.S.'s best interests, they were required to work together to reach a mutual decision. But if that failed, the parties had to attend mediation and allow the mediator to make a recommendation. If either parent disagreed with the mediator's recommendation, that parent could seek to have the issue resolved in court.[1] The allocation judgment was constructed with the help of E.S.'s guardian *ad litem*, Gloria Block.

¶ 6    In July 2020, Samvel filed an emergency petition to reappoint Block as guardian *ad litem* as well as to expedite a hearing to reinstate parenting time, to award make-up parenting time and to find an abuse of parenting time by Rymma. In the petition, Samvel argued that the immediate reappointment of Block as guardian *ad litem* was necessary to investigate the conduct of Rymma and her refusal to abide by the parties' allocation judgment.[2] Samvel noted that his parenting time from 2016 to 2018 proceeded according to the allocation judgment and that, in 2019, he and Rymma reached an agreement whereby he would have parenting time with E.S. approximately half of each month in Michigan, where he still lived. However, Samvel claimed that, since February 2020, Rymma had refused to allow him to have parenting time and refused to facilitate

---

[1] From the inception of the case until the judgment for dissolution of marriage was entered, Judge Alfred Levinson presided over the case.

[2] At this point, Judge Rossana P. Fernandez began presiding over the case.

daily phone calls between him and E.S despite his persistent demands. According to Samvel, Rymma became "vindictive" in late 2019 and began preventing E.S.'s contact with him citing the coronavirus, among other reasons. As of the filing of his petition, Samvel claimed that he only spoke to E.S. for a few minutes every three to five days. Samvel stated that he attempted to resolve these issues directly with Rymma and through mediation, but Rymma responded by telling him to go to court. Samvel attached to his petition various e-mails and texts between him and Rymma, which showed his desire to see E.S. and have parenting time with her.

¶ 7       The next day, the circuit court entered an agreed order reappointing Block as the guardian *ad litem* and ordering her to immediately begin her investigation regarding the parenting schedule of the parties and the issue of E.S. starting school in the fall.

¶ 8       On August 24, 2020, with the advice of Block, the circuit court ordered that E.S. attend a school in Buffalo Grove, Illinois, for the fall semester. However, in the event that E.S. could not attend that school, the court ordered that she attend a school in Lincolnshire, Illinois, pending Block's investigation and approval. In the event that E.S. could not attend either of those two schools, the court ordered that she "shall be allowed to attend" a school in Caledonia, Michigan, near where Samvel lived. The court entered its order as a temporary one and without prejudice to either parent.

¶ 9       Also on August 24, 2020, Samvel filed a petition to modify the parties' allocation judgment, wherein he acknowledged that the allocation judgment did not provide for a parenting time schedule beyond 2018. However, Samvel argued that, based upon the parties' most recent schedule—excluding the times Rymma recently denied him parenting time—a substantial change in the circumstances had occurred which required the modification of the allocation judgment.

¶ 10     Three days later, the parties each filed emergency motions. Samvel filed an emergency petition to turn over E.S. and for a finding of an abuse of parenting time by Rymma. In the petition, he asserted that the school in Buffalo Grove could not accept E.S. and Block did not believe the school in Lincolnshire was in E.S.'s best interests because it was a daycare and not a school. As such, Samvel stated that, pursuant to the circuit court's order, E.S. was required to attend school in Michigan. However, according to Samvel, Rymma had refused to turn over E.S. and "barrage[d]" Block with different options for a third school instead of the one in Michigan.

¶ 11     Rymma then filed an emergency motion to reconsider, vacate and/or modify the circuit court's August 24, 2020, order. In the motion, Rymma asserted that E.S. was five years old and had never lived anywhere but Illinois with Rymma, who had always been her primary caretaker and primary source of physical, mental and emotional support. However, Rymma posited that the court's order essentially permitted a relocation of E.S. without a petition to relocate having been filed or answered. Rymma further argued that Samvel was not even eligible to bring a relocation petition given that he never had been allocated the majority of parenting time or equal parenting time. Moreover, Rymma contended that the court could not unilaterally allow the relocation of E.S. without a hearing on whether relocation would be in her best interests.

¶ 12     Samvel responded to Rymma's motion, arguing that the circuit court's order was entered after hearing argument from both parties' counsel and Block, and thus, when the court entered the order, it was "plainly in the best interests of [E.S.]." Furthermore, Samvel posited that the court's order did not allow a permanent relocation of E.S., but rather a temporary solution for one semester of schooling. Samvel highlighted that, contrary to Rymma's argument, they had been operating under an equal parenting time schedule as of 2019. Samvel concluded his response by claiming

that E.S. was currently not enrolled in any school and that Rymma's actions were not only in violation of the court's order but also endangering the mental and physical health of E.S.

¶ 13     After Samvel responded to Rymma's motion, she filed a response to his petition, which also acted essentially as a reply in support of her motion. Therein, Rymma stated that she had enrolled E.S. in the sister school of the school in Buffalo Grove, which was located in Fox River Grove, Illinois, and E.S. would begin on September 1, 2020. Rymma noted that E.S. was on a waiting list at the Buffalo Grove school and once a spot opened up, E.S. would be able to transfer schools, making her enrollment in the Fox River Grove school only temporary. Rymma reiterated that Samvel was attempting to cause a "backdoor" relocation of E.S. to Michigan without a hearing in violation of the parties' allocation judgment, E.S.'s best interests, Illinois law and due process.

¶ 14     On August 28, 2020, the circuit court held a videoconference hearing on Samvel's petition and Rymma's motion with Block present. At the hearing, Block recounted the thinking that went into her recommendations for E.S.'s schooling for the fall semester, which ultimately helped form the basis for the court's order four days prior. The main concern, according to Block, was that E.S. needed to attend school in person because Rymma's local school district had labeled E.S. as a "high-risk" learner for various reasons. Given these issues, Block did not believe that E.S. would succeed in a remote learning environment.

¶ 15     Following the hearing, the circuit court ordered that E.S. attend the school in Fox River Grove and immediately transfer to the school in Buffalo Grove when a spot became available. However, if E.S. was late to school more than two consecutive days, she would have to "immediately transfer[ ]" to the school in Michigan. The court added that, if E.S.'s school went "fully remote," her location of schooling would become immediately reviewable. Additionally,

during the hearing, the court agreed with Samvel's attorney that the instant order was temporary and that it would fashion a long-term plan for E.S. at a later date.

¶ 16    The following month, Rymma responded to Samvel's petition to modify the parties' allocation judgment, wherein she asserted that she attempted to facilitate both parenting time and phone calls between Samvel and E.S. However, according to Rymma, due to various circumstances, including the coronavirus, Samvel was not always able to have parenting time with E.S. Rymma supported these claims with text messages and e-mails between her and Samvel.

¶ 17    On November 9, 2020, in anticipation of a hearing on whether to modify the circuit court's temporary order scheduled for the following day, Block filed an interim report of the guardian *ad litem*. In the report, Block stated that her investigation revealed that E.S. had never attended any preschool or any type of activity class (*i.e.*, dance or sports), and she did not speak English and was not potty trained. Block noted that both parents blamed each other for E.S.'s status. According to Block, when Rymma enrolled E.S. in kindergarten in the local school district at the end of August 2020, E.S. was placed in an English as a second language class and was considered a " 'high risk' " learner. However, the local school district's kindergarten went completely remote and Block did not believe E.S. would benefit from a virtual learning experience given her lack of an in-person experience. This caused an expedited search for an in-person kindergarten, which eventually spawned the circuit court's August 24 and August 28, 2020, orders and led to E.S. attending school in Fox River Grove. When Block attempted to contact the school in Fox River Grove to check in on E.S.'s progress, she encountered difficulty getting ahold of the owner and characterized her initial contact with the school as "not positive." Eventually, Block was able to contact the owner, who relayed that E.S. was doing very well in school. But Block believed this

"generalized positive report" was made without the owner having any specific information about E.S.

¶ 18    On October 30, 2020, Block visited to the school on her own accord, which she conceded was an "unusual day" given it was the last day of the week before Halloween, but she observed that the school was "not a traditional school" but more like a daycare. Block observed multiple teachers, including the director of the facility, not wearing masks and no social distancing among the children. Block was able to watch E.S. in the classroom singing and dancing, and observed that E.S. understood and followed the directions of the teacher. Block was able to speak with the classroom teacher, who relayed that E.S. was "doing very well" and while E.S. understood English, she was relatively quiet. Block reviewed assignments that E.S. had completed and found them "well done." Block observed that, in E.S.'s classroom, there was a mix of older and younger children, indicating to Block that the classroom was a combination of preschool and kindergarten. Block concluded that the school was a "great introduction" to a traditional school for E.S., but noted that E.S.'s attendance there "was never intended to go beyond the fall semester." To this end, Block had asked each parent to report if their local school district was remote or in-person, but only Samvel responded. He stated that the school in Michigan was in-person and ready to enroll E.S. any time. Block independently reviewed the Rymma's local school district's website, which indicated that it had been operating under a hybrid model of part in-person learning and part remote learning. In light of the circuit court's order from August 28, 2020, that the school in Michigan was the backup option to the school in Fox River Grove, Block recommended that E.S. attend school in Michigan for the second semester.

¶ 19    After Block filed her report, Rymma filed an emergency motion to continue the hearing scheduled for the following day, arguing that she and her attorney needed time to review Block's interim report and bring necessary witnesses.

¶ 20    The next day, the circuit court held a hearing on whether to modify its temporary order from August 28, 2020. After some initial argument over Rymma's emergency motion to continue the hearing, the court denied the motion. During the hearing, Rymma requested an evidentiary hearing on the matter. However, the court rejected the request and made the point multiple times that it was not holding an evidentiary hearing and not resolving a petition to relocate, as one had never been filed. The court remarked that its only concern was "the flutter of emergencies" existing in the case and what was in E.S.'s best interests temporarily until the court could hold a formal evidentiary hearing on all pending petitions and determine a permanent solution. The court then had Block summarize her interim report. Block asserted that she believed E.S. needed a more traditional kindergarten experience. Based on a perceived lack of consistency about whether Rymma's local school district's kindergarten would be in-person, remote or some hybrid approach, Block reiterated her recommendation that E.S. attend school in Michigan on a temporary basis due to the school being completely in-person. After Block summarized her recommendation, Rymma's attorney was able to question Block about her report and her recommendation. Following the hearing, the circuit court set the matter for a ruling in a few weeks.

¶ 21    Two weeks after the hearing, Rymma filed an emergency motion to present new evidence, specifically evidence that the high school in Samvel's local district had moved to remote learning, "kindergartens are going to conduct remote learning for the week of Thanksgiving break," and athletics and extracurricular activities for kindergarten through 12th grade were suspended. Samvel filed a response, arguing that Rymma's motion was not an emergency, she skewed the

evidence by cherry-picking facts favorable to her and overall, she was just unhappy that Block had recommended that E.S. temporarily attend school in Michigan for the second semester. The circuit court entered the motion and delayed ruling on it until the already scheduled upcoming court date.

¶ 22    On November 30, 2020, Block filed a supplemental interim report of the guardian *ad litem*. Block asserted that she e-mailed the principal of the elementary school in Rymma's local school district and asked whether school was remote or in-person. In response, the principal stated that the school was remote. Additionally, Block asserted that she called the elementary school in Samvel's local school district and asked whether school was remote or in-person. In response, the school—Block did not provide the name or position of the person she spoke to—stated that it was in-person.

¶ 23    On December 18, 2020, the circuit court modified its prior temporary order concerning E.S.'s schooling and found that, "given the very unique circumstances and facts of this particular case," it was in the best interests of E.S. "to attend in-person learning." The court further concluded that "it would be detrimental" and not in E.S.'s best interests "to attend virtual learning or to continue her attendance" at either the school in Fox River Grove or its sister school in Buffalo Grove. Consequently, the court ordered "on a temporary basis, and without prejudice to either party" that E.S. attend school in Michigan for one semester, beginning January 2021 "through the last day of school, June 4, 2021." The court further ordered that E.S. return back to her mother in Illinois on June 5, 2021, the beginning of summer break. Lastly, the court stated that its order should not be interpreted as a relocation or a change in E.S.'s home state.

¶ 24    Rymma subsequently filed an emergency motion to stay enforcement of the circuit court's temporary order pending her request for leave to appeal to this court. The circuit court found that Rymma's motion was not an emergency and ordered that its temporary order remain in effect.[3]

¶ 25    On December 30, 2020, Rymma filed a petition for leave to appeal to this court under Illinois Supreme Court Rule 306(a)(5) (eff. Oct. 1, 2020). Rymma also filed an emergency motion to stay enforcement of the circuit court's December 18, 2020 order, pending the resolution of her petition for leave to appeal and her appeal, if leave were granted. The next day, this court granted Rymma's emergency motion to stay and subsequently denied Samvel's motion to reconsider.

¶ 26    Back in the circuit court, on January 27, 2021, the court set the case for trial, presumably on Samvel's petition to modify the parties' allocation judgment, beginning on June 7, 2021. Ultimately, on February 5, 2021, this court granted Rymma's petition for leave to appeal and continued the stay order until further order of the court.

¶ 27                                    II. ANALYSIS

¶ 28    On appeal, Rymma contends that the circuit court erred in various manners leading up to its December 18, 2020, order that, among other things, directed E.S. to attend school in Michigan from January 2021 until June 4, 2021. Most notably, Rymma argues that the court made this ruling despite never holding an evidentiary hearing on the matter and a petition to relocate never having been filed by Samvel. Through Rymma's various arguments, she ultimately requests that this court reverse the circuit court's order of December 18, 2020.

¶ 29    Before addressing the merits of Rymma's contentions on appeal, we first must consider the question of mootness. From the time an appeal is filed in the appellate court until the time the

---

[3] This order was entered by Judge James Shapiro.

appellate court enters a disposition, the case must continue to present an actual controversy. *Maday v. Township High School District 211*, 2018 IL App. (1st) 180294, ¶ 45. "The existence of a real controversy is an essential prerequisite to appellate jurisdiction" (*In re Estate of Wellman*, 174 Ill. 2d 335, 353 (1996)), and "courts of review in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). Because mootness presents a question of appellate jurisdiction, we have a duty to address the issue regardless of whether either party to the appeal has raised the issue. *Tirio v. Dalton*, 2019 IL App (2d) 181019, ¶ 21. To this end, we note that Samvel, the appellee, has not filed a brief and thus, has not raised the issue of mootness. But because the record is simple and the case can be decided without the aid of an appellee's brief, we may review this case on Rymma's brief alone. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Similarly, Rymma has not raised the issue of mootness in her brief. We now address the mootness issue ourselves.

¶ 30 "A case on appeal is rendered moot where the issues that were presented in the trial court do not exist any longer because intervening events have rendered it impossible for the reviewing court to grant the complaining party effectual relief." *In re India B.*, 202 Ill. 2d 522, 542 (2002). In this case, while Rymma raises various arguments as to the circuit court not following proper procedure leading up to its December 18, 2020, order, her ultimate request for relief on appeal is that we reverse the court's order. That order directed E.S. to attend school in Michigan for one semester, starting at the beginning of January 2021 and ending on June 4, 2021. The order further directed E.S. to return to Illinois to Rymma on June 5, 2021. As we previously noted, the court's order was stayed by this court upon Rymma filing her petition for leave to appeal and then stayed indefinitely upon her petition being granted. Because the time period covered by the order has

already elapsed and the order itself was stayed indefinitely by this court, regardless of if we affirm or reverse the temporary order, it can never go into effect, resulting in Rymma obtaining exactly what she wanted. See *Hanna v. City of Chicago*, 382 Ill. App. 3d 672, 677 (2008) (remarking that mootness occurs when the complaining party "has secured what [s]he basically sought and a resolution of the issues could not have any practical effect on the existing controversy"). And therefore, as of now, it is as if the order never existed, rendering this appeal moot. See *Dear v. Dear*, 87 Ill. App. 2d 72, 72 (1967) (finding an appeal of a child custody order moot where the time period covered by the order had expired by the time the case was disposed of on appeal).

¶ 31 However, there are various exceptions to the mootness doctrine that allow a reviewing court to review the merits of an issue on appeal despite the issue itself being moot. See *In re Alfred H.H.*, 233 Ill. 2d 345, 355-61 (2009). The three most recognized exceptions are when it would be in the public's interest to resolve the issue on appeal, where the issue is capable of repetition yet evading review and where there are collateral consequences to the issue. *Id.* This case clearly does not present a question that is of the public nature, and thus, the public-interest exception does not apply. See *id.* at 355. Likewise, the collateral-consequences exception does not apply because Rymma has not suffered, and is not threatened with, an actual injury given that the unfavorable court order to her was stayed by this court and will never go into effect. See *id.* at 361. The only exception that could apply in the present case would be the exception for an issue that is capable of repetition yet evading review. This exception has two elements that must be met. First, "the challenged action must be too short in duration to be litigated fully prior to its cessation," and second, there must be "a reasonable expectation that the same complaining party will be subject to the same action again." *In re Benny M.*, 2017 IL 120133, ¶¶ 19-20.

¶ 32    As noted, this court granted the petition for leave to appeal in this case on February 5, 2021, exactly four months before the circuit court's temporary order would expire. Whether four months would have been too brief a time for the parties to complete their briefing and for us to file a disposition—even considering the accelerated docket this case proceeded under pursuant to Illinois Supreme Court Rule 311(a) (eff. July 1, 2018)—is immaterial because regardless of if the first element of the capable-of-repetition-yet-evading-review exception has been met, the second element has not been met. In order for a "reasonable expectation that the same complaining party will be subject to the same action again," there has to "be a substantial likelihood that resolution of the issue presented would have some bearing on a similar issue raised in a subsequent case" of the complaining party. *Id.* ¶¶ 20, 22. As the circuit court noted below, the temporary orders were necessary only until such time the court could hold an evidentiary hearing and formulate a long-term plan for E.S. To this end, the final order contained in the record on appeal from the circuit court was a trial order setting the case for trial on Samvel's petition to modify the parties' allocation judgment beginning on June 7, 2021. This is indeed the evidentiary hearing contemplated by the court and where it will formulate the long-term plan for E.S., which obviates the need for further temporary orders. Given the trial set to commence in this case on June 7, there is not a substantial likelihood that the resolution of the issues presented in this appeal would have some bearing on a similar issue raised in a subsequent case of Rymma because it is unlikely the court will enter another temporary order allowing E.S. to attend school in Michigan without an evidentiary hearing. Therefore, the second element of the capable-of-repetition-yet-evading-review exception has not been met, and the exception does not apply.

¶ 33    In sum, this case is moot, and no exception to the mootness doctrine applies. Accordingly, we dismiss Rymma's appeal as moot. See *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 293

(2005) (when an appeal is moot and no exception to the mootness doctrine applies, the reviewing court must dismiss the appeal).

¶ 34                                    III. CONCLUSION

¶ 35     For the foregoing reasons, we dismiss this appeal as moot.

¶ 36     Appeal dismissed.